UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS, et al.,

       Plaintiffs,                      Case No. 17-cv-12100
                                          Hon. Mark A. Goldsmith
vs.

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT,
et al.

       Defendants.
_____/

**OPINION & ORDER
DENYING PLAINTIFFS' MOTION TO AMEND THIS COURT'S JULY 24, 2017
ORDER (Dkt. 49) AND GRANTING PLAINTIFFS' MOTION
FOR CERTIFICATE OF APPEALABILITY (Dkt. 48)**

On July 24, 2017, this Court issued an opinion and order (Dkt. 47) dismissing thirteen counts of Plaintiffs' sixteen-count amended complaint (Dkt. 12). This left one substantive count, as well as two counts identifying particular forms of relief, pending before this Court. Among the dismissed counts were several state-law claims that objected, in one way or another, to the way that school millage funds are intended to be spent, and to the Detroit Public Schools defendants for failing to take affirmative action to prevent those expenditures. This Court dismissed those claims primarily on the basis of Michigan's own standing doctrine as set forth in Lansing Schools Education Association v. Lansing Board of Education, 792 N.W.2d 686 (Mich. 2010), and case law interpreting Michigan Court Rule 2.605. In the alternative, it dismissed those same claims, plus a state-law claim for a writ of mandamus, based upon Bigger v. City of Pontiac, 210 N.W.2d 1 (Mich. 1973), a Michigan Supreme Court case holding that, if possible, lawsuits challenging municipal public works projects must be promptly filed when a delay in

1

filing would harm the project.

Following the July 24, 2017 order, Plaintiffs filed two motions. One is styled as an "emergency motion" under Federal Rule of Civil Procedure 59(e), and it argues that this Court committed clear error by stating that its dismissals under Lansing Schools were with prejudice.[1] See generally Pls. Mot. to Amend (Dkt. 49). The other, curiously not styled as an emergency motion, seeks a partial final judgment in line with the July 24, 2017 order, without which Plaintiffs cannot promptly appeal. See generally Pls. Mot. for Partial J. (Dkt. 48). This Court ordered response briefs from Defendants, and it received them (Dkts. 51-53). Because oral argument will not aid the decisional process, the motions will be decided based on the briefing. See E. D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

**I. The Motion to Amend or Correct the July 24, 2017 Order is Denied**

Plaintiffs argue that dismissals based on lack of standing are properly deemed dismissals based on lack of subject-matter jurisdiction. See Pls. Mot. to Amend at 3. Plaintiffs go on to cite several cases for the general proposition that, generally speaking, dismissals based on a lack of subject-matter jurisdiction ordinarily should be without prejudice. Id. at 3-4.

There are several reasons why the motion should be denied. First, as highlighted by Defendants, Plaintiffs' premises are based on federal standing law, which this Court did not apply. Lansing Schools was an explicit break from Michigan courts' practice of adhering to federal standing. See Lansing Sch., 792 N.W.2d at 697 (2010) ("Lee and its progeny departed dramatically from historical jurisprudence in Michigan, and the bounds of the constitutional text, when they interpreted the Michigan Constitution to compel a standing doctrine that is essentially

---

[1] The stated basis for the emergency is that this court's ruling on prejudice "is preventing Plaintiffs from adjudicating these state-law claims in state court" prior to August 15, 2017, the deadline by which DPS Defendants must take action to place any proposal on Detroit's November 2017 general election ballot. See Pls. Mot. to Amend at 2 n.1.

coterminous with the federal standing doctrine."). By citing the wrong body of law, Plaintiffs have failed to carry their heavy burden to show that this Court clearly erred.

Second, although it is "true that a lack of 'standing' in this constitutional sense, like the lack of subject matter jurisdiction generally, mandates a dismissal without prejudice," B. & V. Distrib. Co. v. Dottore Cos., LLC, 278 F. App'x 480, 487-488 (6th Cir. 2008) (emphasis added), dismissal with prejudice is proper when the plaintiff lacks standing in the sense that state law does not afford him a right to recovery, see id. ("[Plaintiff] cannot pursue such claims, where neither his status as a company official and shareholder nor his alleged right to receive the payments for the sale of the company's assets is sufficient to confer 'standing' — i.e., a right to an individual recovery — under the state law that governs these claims.").[2]

Finally, the purpose underlying the rule that constitutional standing deficiencies should be dismissed without prejudice is that such deficiencies may be cured. See, e.g., West v. Ray, 401 F. App'x 72, 77 (6th Cir. 2010) (dismissal without prejudice would "serve no purpose . . . [b]ecause [plaintiff]'s complaint is time-barred even if his theory of standing is accepted . . . ."). Here, this Court alternatively held that the very same claims that were dismissed for lack of state-law standing would be dismissed under Bigger if Plaintiffs had survived Defendants' standing arguments. See 7/24/2107 Op. & Order at 8 ("Even if this Court is in error regarding Plaintiffs' lack of standing to bring the majority of their state-law claims, all of Plaintiffs' state-

---

[2] All cases that Plaintiffs cite either pertain to Article III standing, see Univ. of Pittsburgh v. Varian Med. Sys., Inc., 569 F.3d 1328, 1332 (Fed. Cir. 2009); Hyman v. City of Louisville, 53 F. App'x 740, 742 (6th Cir. 2002); are unpersuasive, see Allstate Ins. Co. v. Glob. Med. Billing, Inc., 520 F. App'x 409, 412 (6th Cir. 2013) (discussing constitutional and prudential standing without distinction);or not applicable to our case, see Ernst v. Rising, 427 F.3d 351, 367 (6th Cir. 2005) (discussing subject-matter jurisdiction dismissals and not mentioning standing); Pratt v. Ventas, Inc., 365 F.3d 514, 523 (6th Cir. 2004) (non-standing subject-matter jurisdiction dismissal).

law claims . . . are subject to dismissal on account of [Plaintiffs'] dilatory conduct . . . ."). Accordingly, it would serve no practical purpose to grant Plaintiffs' motion.

The motion to amend or correct this Court's July 24, 2017 opinion and order is denied.

**II. The Motion for a Certificate of Appealability is Granted**

As a result of this Court's July 24, 2017 opinion and order, one claim remains pending against DPS Defendants: Count II, in which Plaintiffs lodged an equal-protection "class of one" claim. See 7/24/2017 Op. & Order at 33; see also Am. Compl. ¶¶ 53-71. Plaintiffs now seek a partial final judgment and certificate of appealability permitting them to appeal the dismissal of counts VIII and IX, which sought, respectively, (i) a declaration that DPS Defendants have authority to place a particular issue on Detroit's November 2017 general election ballot, and (ii) a writ of mandamus compelling DPS Defendants to place that issue on the ballot. See Pls. Mot. to Amend at 4; see also id. at 3-4 (indicating that desire to appeal relates only to state-law claims).

Under Federal Rule of Civil Procedure 54(b), due to the pendency of Count II, the default rule is that Plaintiffs are not permitted to appeal this Court's order. That rule provides, however, that "[w]hen an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." This rule "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc., 807 F.2d 1279, 1282 (6th Cir. 1986) (quoting Solomon v. Aetna Life Ins. Co.,

782 F.2d 58, 60 (6th Cir. 1986)). To avoid abusing its discretion, a district court must do more than just recite the Rule 54(b) formula of "no just reason for delay." Id.

District courts should consider the following "nonexhaustive list of factors" when making a Rule 54(b) determination:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

Gen. Acquisition, Inc. v. GenCorp, Inc., 23 F.3d 1022, 1030 (6th Cir. 1994) (quoting Corrosioneering, 807 F.2d at 1283).

Plaintiffs assert that there is no just reason for delay because "discovery will not be completed nor will the remaining claims be adjudicated prior to the statutory deadline" by which DPS Defendants must take action to place any proposal on Detroit's November 2017 general election ballot. See Pls. Mot. to Appeal at 4-5. This date is August 15, 2017. See DDA Resp. to Mot. to Appeal at 1 (Dkt. 53); see also Mich. Comp. Laws § 168.312(1).

DPS Defendants merely assert that "[w]hat remains of Plaintiffs' case will be disposed of quickly, as the facts which would support a grant or denial of relief on the remaining claim are few." See DPS Resp. at 8 (Dkt. 51). Although this assertion may be true in the normal course of litigation, it does not appear to be true vis-à-vis the looming statutory deadline that Plaintiffs invoke. Under the circumstances, this argument is without merit.

DDA Defendants take the opposite tack, arguing that "there is no reason to believe that the appeal would be resolved by August 15[,] [2017]." DDA Resp. to Mot. to Amend at 1; see also id. at 4 ("[I]t is extremely unlikely that the appeal could be resolved, remanded, mandamus

5

be ordered and a resolution passed by the school board by 4 p.m. on August 15, 2017."). This argument, which acknowledges the pressing nature of the relief Plaintiffs seek, is unsupported by law. DDA Defendants cite to no provision in the Federal Rules of Appellate Procedure, the Sixth Circuit Rules, case law, or elsewhere to show that the Sixth Circuit will be unable to timely resolve these issues. This argument, too, is without merit.

DDA Defendants also make a tortured argument that the state-law issues to be appealed have "substantial overlap" with the remaining equal-protection "class of one" claim. See DDA Resp. to Mot. to Amend at 6. This Court disagrees. There is no discernable legal relationship between the allegedly unconstitutional treatment that Davis received at the School Board meeting and the state-law claims, such that the Sixth Circuit — if eventually called upon to review the "class of one" claim — might have to revisit issues raised in the state-law claims. The claims share no legal or factual bases. Nor is there any risk that future developments in the "class of one" claim before this Court could moot issues that Plaintiffs wish to appeal right now.

Finally, DDA Defendants argue that the exigency is of Plaintiffs' own making; had they challenged the school millage fund at an earlier date, which this Court found was an option available to them, see 7/24/2017 Op. & Order at 11-12, there would be no need for an interlocutory appeal. See DDA Resp. to Mot. to Amend at 7-8 ("They sat on their alleged claim for years.").[3] Yet DDA Defendants do not frame this argument within the context of the inquiry that this Court must follow. While the instant exigency might indeed be Plaintiff's fault, the fact of the exigency remains.

---

[3] DDA Defendants also claim that "[a]n appeal now would not shorten the time of trial on the remaining Count and would not reduce expense. In fact, two appeals of this matter would significantly increase costs." DDA Resp. to Pl. Mot. to Amend at 6-7. Given that there is no overlap between the issues, that no explanation for this conclusion is given, and that the assumption that there will be a second appeal is purely speculative, this Court finds this argument unpersuasive.

Accordingly, the Court finds no just reason for delay and grants Plaintiffs' motion to appeal the state-law claims. This order comprises a certificate of appealability as to this Court's disposition of Plaintiffs' state-law claims.

### III. Conclusion

For the reasons set forth above, Plaintiffs' motion to amend this Court's July 24, 2017 opinion and order (Dkt. 49) is denied. Plaintiffs' motion for a certificate of appealability (Dkt. 48) is granted. A separate partial final judgment will enter in accordance with this Court's July 24, 2017 opinion and order.

SO ORDERED.

Dated: August 5, 2017　　　　　　　　　　　s/Mark A. Goldsmith
　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2017.

　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　Case Manager