UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS, et al.,

       Plaintiffs,                        Case No. 17-cv-12100
                                                        Hon. Mark A. Goldsmith

vs.

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT,
et al.,

       Defendants.
_____/

# OPINION & ORDER
# GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT
# (Dkt. 81)

This matter is now before the Court on Defendants Detroit Public Schools Community District (the "District"), Detroit Public Schools Community District Board of Education (the "Board"), and Dr. Iris Taylor's amended motion for summary judgment (Dkt. 81). On July 24, 2017, the Court issued an opinion and order in this case, dismissing all but one of Plaintiffs Robert Davis and Etta Wilcoxon's claims – a claim that Davis' equal protection rights were violated at a June 23, 2017 Board meeting. See Davis v. Detroit Pub. Sch. Cmty. Dist., No. 17-12100, 2017 WL 3129838 (E.D. Mich. July 24, 2017).[1] Defendants now move for summary judgment on this claim. For the reasons that follow, the Court grants Defendants' motion.

---

[1] The Court's opinion noted that the lawsuit survived "as to Counts II, XV, and XVI of the amended complaint only." Davis, 2017 WL 3129838, at *17. However, only Count II, the equal protection claim, provides a cause of action; Count XV seeks costs and attorney fees under 42 U.S.C. § 1988 and Count XVI seeks compensatory, punitive and nominal damages. Counts XV and XVI cannot survive without the equal protection claim. See, e.g., Bowden v. City of Franklin, Ky., 13 F. App'x 266, 276 (6th Cir. 2001) ("Count VI is not a claim for relief but a request for punitive damages.

1

## I. BACKGROUND

On June 20, 2017, Plaintiffs, through their attorney, emailed LaMar Lemmons, a member of the Board and the District's General Counsel. Defendants' Statement of Material Facts ("SMF") ¶ 7; see also 7/20/2017 E-Mail, Ex. D to Defs. Mot. (Dkt. 81-5). In the email, Plaintiffs' counsel "respectfully request[ed] and demand[ed] that the Detroit Public Schools Community District Board of Education place on the November 2017 General Election a ballot question asking the registered voters of the City of Detroit to approve or disapprove the DDA [Detroit Downtown Development Authority] and the Detroit Brownfield Redevelopment Authority to use . . . tax revenue generated by the levy of the 18-mills Detroit Public Schools' Operating Millage for the purpose of financing the additional improvements to the new Little Caesars Arena and financing the construction of the new Detroit Pistons' Corporate Headquarters and Practice Facility." 7/20/2017 E-Mail at PageID.2452. Plaintiffs requested that the Board take action within seven days of receipt of their request. Id. at PageID.2455.

Three members of the Board – LaMar Lemmons, Georgia Lemmons, and Deborah Hunter-Harvill – called for a special Board meeting to gather more information on tax-increment financing pursuant to the Downtown Development Authority Act, Mich. Comp. Laws § 125.1651 et seq. SMF ¶ 9. LaMar Lemmons then contacted Defendant Dr. Iris Taylor, the President of the Board, regarding the agenda for the special meeting. Id. ¶ 10. It is undisputed that Lemmons did not request that Davis be allowed to make a presentation at the meeting. Id.

---

Since all other counts are barred by the statute of limitations, the issue of punitive damages is moot."); York v. Forest View Psych. Hosp., No. 10-28, 2011 WL 1792301, at *4 (W.D. Mich. April 19, 2011) ("§ 1988 does not create an independent cause of action for a civil rights violation."). Accordingly, the Court dismisses Counts XV and XVI along with Count II.

The Board held a special meeting on June 23, 2017, which Davis attended. See id. ¶ 11. The sole item for discussion on the agenda was the following:

> [C]onsider issues of tax captures involving the Pistons Little Caesars Arena project in Detroit and the Detroit Public School's Community District's authority to place on the ballot a question regarding the Downtown Development Authority's and the Detroit Brownfield Redevelopment's use of incremental tax revenues generated by the levy of the 18 mills for the School District of the City of Detroit Operations.

Id. ¶¶ 11-12. At the meeting, the District's General Counsel, Phyllis Hurks-Hill, offered her legal opinion regarding the issues. Id. ¶ 13. Davis contends that she provided "false and misleading information," which he interjected to correct, see Pls. Resp. at 7 (Dkt. 86); Defendants characterize his interjections as disruptive, see SMF ¶¶ 13-14. Dr. Taylor informed Davis that if he continued to speak, she would ask him to leave. Id. ¶ 14. Davis was nonetheless given the opportunity to address the Board during the time for public comment. Id. ¶ 15. He spoke for two minutes, then yielded the microphone. Id.

The Board's bylaws, which contain procedural rules for its meetings, require formal agendas. SMF ¶¶ 1-2. The agenda belongs to the Board in its entirety, although it is the responsibility of the Board President to set the agenda. Id. ¶ 2. At each meeting, the Board is able to vote yes or no regarding whether to accept the agenda, or to amend the agenda. Id. Individuals must be placed on the agenda to comment during a Board meeting (other than during the period for public participation). See Taylor Dep., Ex. B to Defs. Mot., at 16 (Dkt. 81-3).

The section of the bylaws regarding public participation provides, among other things, that "[e]ach statement made by a participant shall be limited to two (2) minutes duration[;]" and "[p]ublic participation shall be permitted as indicated on the order of business." Bylaws, Ex. A to Defs. Mot., at 21 (Dkt. 81-2). The bylaws also allow the presiding officer to "request any

3

individual to leave the meeting when that person does not observe reasonable decorum[.]" Id. The presiding officer may waive any of these requirements for due cause upon a majority vote of the Board members present. Id.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

4

## III. ANALYSIS

The Equal Protection Clause "prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio, 430 F.3d 783, 788 (6th Cir. 2005) (emphasis added). "[T]he class-of-one theory of equal protection . . . presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review. . . ." Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 605 (2008). A "class-of-one" plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negating "every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." Warren v. City of Athens, Ohio, 411 F.3d 697, 711 (6th Cir. 2005) (quotations omitted). It is not necessarily dispositive that the decision at issue was discretionary. See Franks v. Rubitschun, 312 F. App'x 764, 766 & n.3 (6th Cir. 2009) (rejecting the argument that "individualized, discretionary decisions can rarely, if ever, be challenged in class-of-one actions").

Defendants offer several reasons why the equal protection claim should be dismissed: (i) the District's discretionary decision-making is not reviewable under a class-of-one theory; (ii) Plaintiffs cannot identify a similarly-situated comparator; and (iii) there is no question of material fact that there was a rational basis for the Board's conduct. The Court finds summary judgment is appropriate based on Defendants' second and third arguments.

i. **Similarly-situated comparator**

First, Plaintiffs have failed to identify a similarly-situated comparator. A plaintiff who wishes to succeed on a class-of-one claim "must first prove that [he] has been treated differently

from similarly situated individuals." Taylor Acquisitions, LLC v. City of Taylor, 313 F. App'x 826, 836 (6th Cir. 2009). "While a plaintiff need not demonstrate that he is identical to the person who allegedly received more favorable treatment, 'the plaintiff and the [person] with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant respects.'" JDC Mgmt., LLC v. Reich, 644 F. Supp. 2d 905, 927 (W.D. Mich. 2009) (quoting Arendale v. City of Memphis, 519 F.3d 587, 604 (6th Cir. 2008)) (alterations in Reich).

Plaintiffs point to activist Helen Moore as someone similarly situated to Davis who was treated more favorably than he was. Pls. Resp. at 16. However, Plaintiffs have submitted only newspaper articles as evidence of Moore's treatment by the Board. As Defendants point out, this is inadmissible hearsay. Park West Galleries, Inc. v. Global Fine Art Registry, LLC, Nos. 08-12247, 08-12274, 2010 WL 987772, at *3 (E.D. Mich. Mar. 12, 2010) ("If offered for the truth of the matter asserted, newspaper articles . . . constitute inadmissible hearsay."); Fed. R. Evid. 801(c).

Even if this evidence were admissible, it would not help Plaintiffs. Plaintiffs argue that the Board's "recent actions of permitting individuals to speak longer than two minutes at a special meeting called at their request" show that there exists a genuine issue of material fact. Pls. Resp. at 9. But the newspaper articles state that Moore was removed from a Board meeting, and that a second meeting was then arranged with a presentation by Moore's group being placed on the agenda. See 3/15/2018 Article, Ex. B to Pls. Resp., at PageID.2730 (Dkt. 87); 3/15/2018 Article, Ex. B to Pls. Resp., at PageID.2732 (Dkt. 87).

Unlike Moore, Davis did not request a special meeting. LaMar Lemmons, who called for the June 23, 2017 special meeting, testified that he did not identify Davis as an expert for purposes of the meeting, nor did he move for Davis to speak at the meeting. Lemmons Dep. Tr., Ex. E to Defs. Mot., at 13-14 (Dkt. 81-6). The meeting agenda for the June 23, 2017 special meeting does

6

not provide that Davis would be speaking or presenting. For this reason, Davis was limited to two minutes of speaking time at the June 23, 2017 meeting. Moore, who <u>was</u> placed on the agenda, is not similarly-situated to Davis.

Plaintiffs also generally argue that other unnamed "individuals" who were "the ones that presented the particular action item that was the subject of the discussion by the Defendant Board" were treated differently than Davis. Pls. Resp. at 11. "'[B]are allegations that "other" applicants, even "all other" applicants, were treated differently' is insufficient; a plaintiff must show that 'these "other" applicants were similarly situated to the plaintiff.'" Taylor Acquisitions, 313 F. App'x at 836 (quoting GJR Inv., Inc. v. Cty. of Escambia, 132 F.3d 1359, 1367-1368 (11th Cir. 1998)). As previously stated, Plaintiffs cannot show that Davis is similarly-situated to an individual who was presenting a particular action item.

For this reason, summary judgment is appropriate.

**ii.   Rational Basis**

Alternatively, Defendants are entitled to summary judgment because Defendants had a rational basis for their treatment of Davis. As stated previously, a "class-of-one" plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negating "every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." Warren v. City of Athens, Ohio, 411 F.3d 697, 711 (6th Cir. 2005) (quotations omitted).

Defendants put forth several conceivable bases to support their actions (complying with the Board's bylaws; allowing the Board's counsel to fully provide information to the Board) that Plaintiffs do not attempt to negate. Defs. Mot. at 17-18. Instead, Plaintiffs rely on the second way of proving a lack of a rational basis, asserting that Defendants' actions were motivated by animus

7

or ill-will.  In that regard, they argue that the only reason the Board and Dr. Taylor did not honor Davis's "request to waive the two (2) minute speaking limit" was that some members of the Board, including Dr. Taylor, "strongly disliked" him.  Pls. Resp. at 14.

As an initial matter, the record is not clear that Davis even made such a request to speak longer than two minutes, whether prior to or during the meeting.  Plaintiffs refer to Davis' "June 20, 2017 request," which they claim was treated "differently than all similar such requests that became agenda items."  Pls. Resp. at 13.  But the June 20, 2017 email cannot reasonably be construed as a request for Davis to speak at a Board meeting.[2]  Nowhere in this email does Davis' counsel request that a special meeting be held, let alone that Davis be permitted to <u>speak</u> at such meeting; the email simply "request[s] this Honorable Body take action within 7 days of receipt of this request."  7/20/2017 E-Mail at PageID.2455.  Plaintiffs do not explain how the Board's failure to proactively seek out Davis' opinion at a Board meeting following this email demonstrates animus.  <u>See</u> <u>Loesel v. City of Frankenmuth</u>, 692 F.3d 452, 466 (6th Cir. 2012) ("[A] showing of animus or ill will . . . requires more than simply failing to invite the [Plaintiffs] to a meeting.").

As for a request made during the June 23, 2017 meeting itself, Plaintiffs state that Davis "requested to speak for longer than two minutes at the meeting, and his request was denied by . . . Defendant Taylor."  Pls. Resp. at 5.  Later, they argue that Dr. Taylor "even refused to permit the members of the Defendant Board <u>to vote</u> on whether to waive the two (2) minute limit requirement[.]"  <u>Id.</u> at 11 (emphasis in original).  They cite generally to Davis' and Lemmons'

---

[2] Plaintiffs claim that it was "understood" by Lemmons that if the Board agreed to hold a meeting based on Plaintiffs' counsel's email, Davis would be permitted to present for more than two minutes.  <u>See</u> Pls. Resp. at 5.  But Lemmons admitted that "initially I assumed that he would present at that time.  That was my assumption.  And that's where I made a mistake.  I did not object; I did not move him to be – to speak on that."  Lemmons Dep. Tr. at 14.  Lemmons did not identify Davis as an expert on the subject of the meeting.  <u>Id.</u> at 13.

8

entire depositions, and the entirety of the Board meeting transcript, in violation of this Court's Case Management Order. See 9/5/2017 Case Management & Scheduling Order at 6 (Dkt. 61) (stating that the non-moving party may raise additional facts in "numbered paragraphs, and each paragraph must include specific references and citations to record evidence") (emphasis added).

The transcript of the meeting does not reflect any such request made by Davis, nor anything that indicates that Dr. Taylor refused to permit the Board to hold a vote:

> Treasurer Mays: Let me ask a different question. Does the Statute require that the Notice be directed to the Board directly physically or does – or does it generally – (inaudible.)
>
> Mr. Robert Davis: (Inaudible.)
>
> Ms. Hurks-Hill: It says it has to be directed to the taxing jurisdiction.
>
> Mr. Robert Davis: No, it doesn't. Excuse me, Madam Chair –
>
> President Taylor: I (inaudible). Thank you.
>
> Mr. Robert Davis: Well, when you – when your Counsel is giving incorrect information, I just wanted to have an opportunity to interject, that's all. Sorry to Madam Chair.
>
> President Taylor: (Inaudible.) Thank you. Please continue –

6/23/2017 Bd. Mtg. Tr., Ex. G to Defs. Mot., at 15-16 (Dkt. 81-8).

> President Taylor: So now, are there any other – another comment on the floor? I'm sorry, sweetheart, you got to stop putting your hand up, because like, I – this is a meeting and in the context of the meeting, I cannot allow you to address the Board at this point.
>
> Mr. Robert Davis: The reason I – if I may –
>
> President Taylor: No, no, no, no.
>
> Mr. Robert Davis: – there is some misstatements was made by legal counsel to help clarify discussion –
>
> President Taylor: No, no, no, no.

9

Mr. Robert Davis: That's –

President Taylor: Sir, if you continue, you know what? I'm going to have to ask you to leave, and I really hate to do that.

Mr. Robert Davis: Duly noted.

President Taylor: Okay. Thank you.

Id. at 22-23.[3]

To the extent the Court can identify any statement made by Lemmons to support Plaintiffs' account, Lemmons stated that he recalled that Davis "was not allowed to make a presentation for more than two minutes by Dr. Taylor[.]" Lemmons Dep. Tr. at 10. This does not show that Dr. Taylor refused to allow the Board to vote on whether to allow Davis longer than two minutes; it simply shows that Dr. Taylor observed the bylaws limiting public participation to two minutes.

However, Davis did state in his deposition testimony that before he began to speak, he asked "the Chair" if he could speak for longer than two minutes, and Dr. Taylor specifically stated that he could not speak for longer than two minutes. Davis Dep. Tr., Ex. I to Defs. Mot., at 58-59 (Dkt. 81-10). Although there is no indication from the meeting transcript that this exchange occurred, the Court will construe the record in the light most favorable to Davis and assume that he did make such request, which was denied.

There is no evidence that Dr. Taylor's denial of Davis' request was motivated by any ill-will or animus. Dr. Taylor testified that she did not harbor any ill-will or animus toward Davis.

---

[3] Plaintiffs also assert that Dr. Harvill requested that Dr. Taylor waive the two-minute speaking limit for Davis. See Pls. Resp. at 11. Plaintiffs do not point to anywhere in the meeting transcript as evidence that this occurred. Upon a review of Davis' deposition testimony, Davis testified that Dr. Harvill did not make a motion to ask that he be allowed to address the Board, but whispered to Davis that Dr. Taylor would not allow him to speak. Davis Dep. Tr., Ex. I to Defs. Mot., at 47-48 (Dkt. 81-10).

Taylor Dep. Tr., Ex. B to Defs. Mot., at 24 (Dkt. 81-3). Davis testified in his deposition that Dr. Taylor "has expressed to individuals that she does not like me," Davis Dep. Tr. at 40, but when asked for specifics stated that "Board Member Lemmons even testified to that fact," id. at 42. But Lemmons testified, when asked if Dr. Taylor had disdain for Davis, that he "wouldn't characterize it that one [sic]." Lemmons Dep. Tr. at 10.

Plaintiffs also generally assert that the Board was motivated by animus or ill-will, see, e.g., Pls. Resp. at 14, but do not explain what actions the Board took to deny Davis equal protection. Plaintiffs repeatedly assert that Dr. Taylor did not allow the Board to vote on whether to waive the two-minute speaking requirement under the Bylaws, which state that "[t]he presiding officer may also . . . waive any or all of these requirements for due cause upon a majority vote of the members present." Bylaws at 21. If the Board was not permitted to vote, the Court fails to see how their motivations could be relevant. Accordingly, only Dr. Taylor's motivations are relevant, and as discussed, there is no evidence that she was motivated by animus or ill-will.

Defendants are entitled to summary judgment on this basis, as well.

## IV. CONCLUSION

For the reasons set forth above, Defendants' amended motion for summary judgment (Dkt. 81) is granted; Counts II, XV, and XVI are dismissed with prejudice.

SO ORDERED.

Dated:  October 10, 2018       s/Mark A. Goldsmith
  Detroit, Michigan       MARK A. GOLDSMITH
     United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 10, 2018.

s/Karri Sandusky  
Case Manager
